## THE ATLAS.[1]

### THE LIZZIE WILSON.

### CHADWICK *et al.* v. ATLAS S. S. Co.

*(District Court, E. D. New York. March 7, 1888.)*

COLLISION—STEAM AND SAIL—FAILURE TO KEEP PROPER LOOKOUT.
    The steam-ship A. was bound down the Atlantic coast on a comparatively clear night, when, some 50 miles south of Barnegat, she collided with the schooner L. W. For the damage the steamer was libeled, and set up in defense an alleged change of course on the part of the schooner, averring that the first light of the schooner seen by her was the green light over her starboard bow, whereupon her wheel was starboarded; that the light afterwards changed to red, on which the steamer's wheel was ported, but too late to avoid the collision. The schooner swore that her course was not changed. From the

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

evidence it appeared either that the light seen by the steamer was the light of some other vessel than the L. W., or else that the schooner was never seen by those on the steamer until they were upon her. *Held*, that the collision was due to want of proper lookout on the steamer.

In Admiralty. Libel for damage.
*Goodrich, Deady & Goodrich*, for libelant.
*Cary & Whitridge* and *George A. Black*, for claimants.

BENEDICT, J. This is an action to recover damages for a collision which occurred on the high seas about 50 miles south of Barnegat, on the 18th of August, 1887, between the steam-ship Atlas and the schooner Lizzie Wilson. The decision of the case is, by the pleadings, made to turn upon the question whether the schooner changed her course, and threw herself under the bows of the steamer. The steam-ship at the time was bound down the coast, and the schooner up the coast. There was a fresh breeze,—the schooner sailing from eight to ten knots an hour, and the steam-ship about the same. The night was thick, but not so thick as to prevent vessels' lights being seen at a considerable distance. The master of the steamer says a green light could be seen at the distance of a mile. According to the testimony of the men from the schooner the steamer's lights were seen two miles away. I cannot find upon the evidence that there was any difficulty on the part of the steamer in seeing the schooner in time to avoid her. The steamer asserts that the schooner changed her course, and in support of her assertion produced witnesses from the steamer who testify that as the vessels approached each other the schooner displayed to the steamer first her green light, which was seen over the steamer's starboard bow,—and the steamer's wheel starboarded; that afterwards the schooner showed her red light, and the steamer's wheel was at once ported, but too late to avoid the schooner, then crossing the steamer's bows. From the schooner there is positive testimony that the steamer was seen on the schooner's port bow; that the schooner held her course; that when the steamer was near the schooner she suddenly starboarded, and came across the schooner's course, and so ran her down. At the argument it was conceded on both sides that it was impossible to reconcile the testimony given by the respective parties, and this is true in regard to some of the testimony. It seems to me, however, not wholly impossible to reconcile much of the testimony by supposing that the green light said to have been seen by the chief officer of the steamer was not a light of the Lizzie Wilson, but of some other vessel.

As already stated, the assertion that the schooner changed her course is sought to be proved by testimony from the steamer tending to show that the schooner as she approached displayed to the steamer first her green light, and afterwards her red light. If it be supposed that the green light which the chief officer of the steamer says he saw off his starboard bow was not a light on the Lizzie Wilson, but the light of some other vessel at the same time bound up the coast, on a course to westward of the course of the Lizzie Wilson; that the attention of those on

the steamer was fastened on this light, so that, although the red light of the Lizzie Wilson was visible on the port bow, it was not seen until the steamer starboarded to give more room to the green light on the starboard bow,—the conflict of testimony is easily understood. This suggestion is not without some support in the testimony. For instance, the wheelsman says that before the order "hard a-port," and after his wheel was hard a-starboarded, he looked out of his window, and saw a green light about two points on the starboard bow, and a ship's length away. But before this, the master of the steamer,—who jumped from his room to the bridge while the wheel was being starboarded,—when he reached the bridge, and while his vessel was swinging to the east, under a hard a-starboard wheel, saw the red light of the Lizzie Wilson, and she was near enough to allow her sails to be seen. If this be correct, the green light which the wheelsman saw after the helm was hard a-starboarded could not have been on the Lizzie Wilson, but must have been on another vessel coming up to the westward of the Lizzie Wilson. But this supposition, if adopted, condemns the steamer for not seeing the Lizzie Wilson in time to avoid her. If the suggestion be not adopted, then the case resolves itself into a question of credibility, and in this aspect the weight of the evidence appears to be in favor of the schooner. I am not able to find from the evidence the fact to be that the Lizzie Wilson was at any time displaying her green light to the steamer, or that the Lizzie Wilson, in presence of a steamer known to be approaching, without reason suddenly threw herself under the steamer's bows, at the risk of total destruction. The testimony from the steamer affords good ground for the belief that no one on the steamer saw the Lizzie Wilson until they were upon her, and that the cause of the collision was failure to keep a proper lookout. This plainly appears in the testimony of the witness Rube, who was on the steamer's bridge. This witness says that he was the first on the steamer to know of the presence of the approaching vessel; that he saw first the schooner's sails, then her green light, and that a collision was imminent before any order was given on board the steamer. If this statement be true, no testimony from the steamer respecting the change of the light from green to red would be of any value to show that the cause of the collision was a change of course on the part of the schooner, for whatever was seen from the steamer was seen after the collision was inevitable. My conclusion therefore is that the steamer has failed to show that the cause of the collision was a change of course on the part of the schooner, and that, on the contrary, the witnesses from the steamer themselves prove that the cause of the collision was want of proper lookout on the steamer.

Let a decree be entered in favor of the libelants, with a reference to ascertain the damages.